**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**May 6, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

TAREK AL BASHER DAGER,

     Petitioner - Appellant,

v.

MERRICK B. GARLAND,
United States Attorney General,

     Respondent - Appellee.

No. 23-9583
(Petition for Review)

_____

### ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **MORITZ**, and **FEDERICO**, Circuit Judges.
_____

Petitioner Tarek Al Basher Dager filed an application for asylum, withholding

of removal, and protection under the Convention Against Torture (CAT).  An

immigration judge (IJ) denied his application and the Board of Immigration Appeals

(BIA) affirmed.  Dager then filed a pro se motion to reopen or reconsider, which the

BIA denied.  He now petitions for review of the denial of his motion to reopen or

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

reconsider.  Exercising jurisdiction pursuant to 8 U.S.C. § 1252, we deny Dager's petition.

I

Dager is a native and citizen of Libya.  He was admitted to the United States on or about September 4, 2010, as a nonimmigrant student with authorization to remain in the United States until he completed his academic program.  Between September 2010 and July 2013, Dager attended three different universities in the Denver metropolitan area.  Due to a lack of funding, Dager was unable to continue his studies, but he remained in the United States without authorization.

In July 2015, the Department of Homeland Security initiated removal proceedings against Dager.  Dager responded by filing an application for asylum, withholding of removal, and protection under the CAT.  Dager alleged in his application that his surname was well-known in Libya due to his paternal uncle, Alhade Dager, having served as a high-ranking military officer under Colonel Muammar al-Gaddafi (Gaddafi).  Dager further alleged that after the Gaddafi regime was overthrown in 2011, his uncle went into hiding in a mountainous region of Libya and the rest of his "family faced threats because of the belief [they] all supported Gaddafi."  R. at 233.  According to Dager, his family moved from their home to a farm for safety, even though the living conditions at the farm were difficult.  Dager also alleged that in early 2016, a group of armed militia questioned his family about why he was still in the United States and what he was doing there.  Dager expressed fear that he would be "arrested and imprisoned and tortured or killed by militias in

2

Libya" based upon his "last name and the associated belief [he] supported Gaddafi."
*Id.*

At his initial appearance before an IJ, Dager conceded all the government's factual allegations and, consequently, the IJ sustained the removal charge. Dager appeared before an IJ again in late 2018 for a hearing on the merits of his application for relief. During his testimony, Dager reiterated the information alleged in his application and discussed other family members in Libya who had allegedly been threatened or arrested due to their perceived connections with the Gaddafi regime. Dager also stated that he filed his application in 2017 because, prior to that time, he did not think he faced a risk of harm in Libya.

Shortly after the hearing, the IJ issued a written decision denying Dager's asylum application and granting him voluntary departure in lieu of removal. As an initial matter, the IJ found that Dager was a credible witness. But the IJ concluded that Dager's asylum application was untimely because it was filed more than a year after his entry into the United States. Although Dager argued that he qualified for an exception to the one-year filing deadline "on account of changed circumstances," the IJ found that "it would have been reasonable for [Dager] to file, at the latest, in 2014, when . . . he was aware of the risks he would face in Libya," and "not . . . after he was served" with the notice to appear. *Id.* The IJ therefore concluded that Dager's "delay in filing was unreasonable," *id.*, his application was untimely, and he was ineligible for asylum.

3

Alternatively, the IJ concluded that, regardless of the timeliness of Mr. Dager's application for asylum, he failed to establish he was a "refugee" as defined in 8 U.S.C. § 1101(a)(42). The IJ found no corroborating evidence to support Dager's allegations regarding his paternal uncle. The IJ thus found that Dager could not "show that the Dager family name [wa]s strongly associated with supporting" Gaddafi, and in turn could not "show that he w[ould] be persecuted on account of his membership in the family and the imputed political opinion that is allegedly tethered to the family name." *Id.* at 109. Further, the IJ found that Dager's testimony alone was insufficient to establish that the alleged incidents involving his family were due to anything other than the "general violence and unrest in the area." *Id.*

The IJ offered two additional grounds for denying Dager's application for asylum. First, the IJ concluded that that even if Dager could establish a nexus between his feared persecution and a protected ground, he failed to establish that his fear of future persecution in Libya was objectively reasonable. In support, the IJ noted that Dager conceded that his family had never been physically harmed by the militias in Libya and that Dager failed to show that he would be identified as a Gaddafi loyalist by the militias in Libya. Second, the IJ concluded that even if Dager could establish an objectively reasonable fear of persecution "in parts of Libya," it would be reasonable for Dager to relocate to other parts of the country. *Id.* at 110.

The IJ also denied Dager's application for withholding of removal, explaining that because Dager failed to demonstrate his eligibility for asylum, he necessarily also failed to meet the more stringent standard for withholding of removal. As for

4

Dager's application for protection under the CAT, the IJ concluded that Dager failed to establish it was more likely than not that he would be tortured if removed to Libya.

Dager appealed the IJ's decision to the BIA which issued a single-member order dismissing Dager's appeal. The BIA expressly agreed with all the IJ's findings and conclusions as to Dager's application. Because the record did not show that Dager paid the voluntary departure bond, the BIA chose not to reinstate the period of voluntary departure and instead ordered Dager removed from the United States.

Shortly thereafter, Dager filed a pro se motion to reopen or reconsider. In it, he asked the BIA to reevaluate the entire record and to consider new information submitted by Dager regarding conditions in Libya. The BIA denied Dager's motion, concluding he failed to establish any error in the BIA's original order, the new evidence would not likely change the result in the case, and no exceptional circumstances warranted sua sponte reopening of the proceedings.

Dager, through counsel, filed a petition for review of the BIA's order denying his motion to reopen or reconsider.

## II

Dager's petition raises two issues. First, he argues that the BIA erred in denying his motion to reopen. Second, he argues that the BIA erred in denying his motion to reconsider.

## A

The purpose of a motion to reopen is to present new material facts and evidence that were previously undiscoverable and unavailable at the former hearing

5

that may, among other things, demonstrate that the petitioner is eligible for relief from removal. *See* 8 U.S.C. § 1229a(c)(7)(B); 8 C.F.R. § 1003.2(c)(1). To merit remand, a petitioner seeking to reopen must show that his new evidence "would likely change the result in the case." *Maatougui v. Holder*, 738 F.3d 1230, 1240 (10th Cir. 2013) (internal quotation marks omitted).

The BIA's denial of a motion to reopen is "a final, separately appealable order." *Infanzon v. Ashcroft*, 386 F.3d 1359, 1361 (10th Cir. 2004). We review the BIA's denial of a motion to reopen for an abuse of discretion. *Id.* at 1362. "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* (internal quotation marks omitted). The BIA also abuses its discretion by committing a legal error or making a factual finding that is not supported by substantial evidence. *See Qiu v. Sessions*, 870 F.3d 1200, 1202 (10th Cir. 2017).

Dager argues that the BIA abused its discretion in denying his motion to reopen because the motion was meant to show "significant and material changes in Libya beginning in 2020 that seriously jeopardize his safety in the country." Pet'r Br. at 12. More specifically, Dager argues that the new evidence showed that the Libyan "government and government-aligned forces . . . took control over several cities" in western Libya, including his hometown, and in doing so "loot[ed] and burn[ed] . . . civilian homes in retaliation for their perceived affiliation with one side or the other" and "planted mines that risk harming civilians." *Id.* at 13–14 (emphasis

6

omitted).  According to Dager, this new evidence "shows [that] harm directed at civilians in Libya is rampant and nationwide," and establishes his "inability to reasonably relocate internally in Libya." *Id.* at 14.  Dager in turn argues that the BIA's conclusion that internal relocation continued to be a reasonable option for him "inexplicably departs from established policies, makes a factual finding on [his] ability to relocate that is not supported by substantial evidence, and . . . constitutes an error o[f] law." *Id.* at 15 (emphasis omitted).

We reject Dager's arguments.  In denying the motion to reopen, the BIA accurately noted that Dager's new evidence indicated the "conditions in Libya ha[d] deteriorated since his hearing in 2018, including politically motivated violence, warring factions and tribes, and atrocities committed against civilians by militia members." R. at 3.  But the BIA concluded, and we agree, that Dager's new evidence was insufficient to establish his right to relief.  In particular, the new evidence did not support Dager's assertion that his fraternal uncle was a prominent member of Gaddafi's military or, in turn, that Dager would likely be viewed as a Gaddafi supporter upon his return to Libya.  Further, although the new evidence indicated that fighting between opposing political factions in Libya continues, it does not undercut the IJ's conclusion that Dager could, like other members of his family, safely relocate.  Under these circumstances, the BIA did not abuse its discretion in denying Dager's motion to reopen.

B

Dager next argues that the BIA erred in denying his motion to reconsider. The purpose of a motion to reconsider is to call the BIA's attention to errors of fact or law in its decision. *Mahamat v. Gonzales*, 430 F.3d 1281, 1283 n.3 (10th Cir. 2005). We have jurisdiction to review the BIA's decision denying a motion to reconsider, and we review that decision for an abuse of discretion. *See Mata v. Lynch*, 576 U.S. 143, 147 (2015) (addressing jurisdiction); *Rodas-Orellana v. Holder*, 780 F.3d 982, 990 (10th Cir. 2015) (addressing standard of review); 8 C.F.R. § 1003.2(a).

Dager argues that the evidence he presented to the IJ, which included his affidavit, a letter from his father, and his testimony before the IJ, was sufficient to establish that his paternal uncle served a prominent role in Gaddafi's military and, in turn, to establish the "requisite nexus to his family and the imputed political opinion that he supported Gaddafi." Pet'r Br. at 16. He maintains that the BIA's decision to the contrary "lack[ed] rational explanation." *Id.* (emphasis omitted).

But Dager failed to make these arguments in his pro se motion to reconsider. Instead, that motion asked the BIA to "reevaluat[e]" the "entire record" in the case, particularly considering the new documents Dager included with his motion. Because Dager's motion to reconsider failed to specify any factual or legal issues that the BIA erroneously decided or overlooked, the BIA understandably "decline[d] to reconsider [its] prior decision." R. at 3.

8

III

Finding no abuse of discretion, we deny Dager's petition for review.

Entered for the Court

Nancy L. Moritz
Circuit Judge